UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMY MARIE H.,

Plaintiff,

v.

CASE NO. 1:25-cv-00082 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 9, 14), as well as Plaintiff's reply brief (Doc. 15). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 9) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Procedural Background

On August 24, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of September 10, 2021. (Tr. 67, 214-18.) Plaintiff's claim was denied initially and on reconsideration. (Tr. 81, 92.)

She then timely requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a telephonic hearing before ALJ William Weir on January 2, 2024. (Tr. 38-65.) On April 9, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 14-37.) The Appeals Council denied her request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

**B. Factual Background**

Plaintiff was born on August 15, 1978, and she graduated high school. (Tr. 41.) Her disabling conditions were initially alleged to include heart disease, diabetes, depression, anxiety, high blood pressure, and high cholesterol. (Tr. 67.)

**1. Plaintiff's Testimony at the Hearing**

At the hearing, the ALJ asked Plaintiff's counsel to state for the record the alleged severe impairments. (Tr. 41.) He identified "heart disease with a history of stent placement as well as type 2 diabetes." (*Id.*) When asked if there was anything else, he responded "[n]o, sir, those are the MDIs that are in the medically-determinable impairments." (*Id.*)

When discussing her work history, Plaintiff responded that she had been looking for part-time work but had not gotten any callbacks. (Tr. 44-45.) When asked why she could not work a full-time position, she responded that she could not due to her "health conditions," noting she gets "very weak, lethargic and tired throughout the day just from a minimal amount of physical energy." (Tr. 45.) Plaintiff elaborated she gets tired quickly from taking the garbage outside or going up the stairs with laundry—both wearing her out and making her feel weak and tired. (*See id.*) She attributed this to her heart disease condition and her medications, (Tr. 47), noting her lethargy and fatigue which continued

even with adjustments to medication, (Tr. 55). Plaintiff acknowledged that she has some stents but otherwise the doctors prescribed medication to keep her chest pain manageable. (Tr. 46.)

Plaintiff indicated that sitting "[wasn't] too bad" and that she could lift ten to fifteen pounds. (Tr. 45.) She explained on some days she would wake up weak and lethargic and must ask for help from her family with laundry, dishes, and/or cooking meals. (Tr. 46.) She described that this happened three or four days a week. (*Id.*) Plaintiff noted that she could not exercise much because of how she feels, nor has she scheduled a diabetic eye examination. (Tr. 48.) She also admitted not using her CPAP machine. (*Id.*)

Plaintiff acknowledged her diabetes was "mainly under control," noting that she may have low sugar days, but they were correctable through her diet. (Tr. 47.) She also identified being on two medications to help control her diabetes. (*Id.*)

The ALJ asked Plaintiff whether the only thing preventing her from working was her coronary artery disease, in light of the fact that her diabetes was mainly controlled, and Plaintiff acknowledged that condition and also identified depression and anxiety. (Tr. 49.) The ALJ then asked Plaintiff's counsel to clarify what conditions needed to be considered, to which Plaintiff's counsel responded:

> That we do have those and there are records inside of the file, but I don't—there's not mental illness, per se, inside of this case. I think that it's more due to depression. The Claimant has an outstanding work history and now finds herself unable to work. So I don't think that those, in-and-amongst-themselves, are disabling.

(*Id.*)

Plaintiff testified that she takes medication for her mental health issues and had a nervous breakdown years ago. (Tr. 58.) She indicated that she sees her counselor once

a month and takes antipsychotic medication because she experienced paranoid thoughts that family members were out to get her. (Tr. 59.) She described her depression and anxiety to be a "constant roller coaster of ups and downs." (Tr. 61.)

### 2. Medical Opinion Evidence As To Plaintiff's Alleged Mental Impairments[1]

Upon initial review, state agency reviewer Dr. May evaluated Plaintiff's mental impairments. (*See* Tr. 66-80.) He concluded that she experienced mild limitations in each of the four paragraph B criteria. (*See* Tr. 72.) He further found, based on her medical records and her ability to perform activities of daily living, which included cooking, cleaning, doing laundry, shopping, managing money, and driving, that her mental impairments were non-severe. (Tr. 72, 73.)

On reconsideration, Dr. Dekeon evaluated Plaintiff's file. (Tr. 82-91.) He found that she experienced moderate limitations in her ability to interact with others and concentrate, persist, or maintain pace, as well as mild limitations in her ability to understand, remember, or apply information and to adapt or manage oneself. (Tr. 85.) Specifically, he acknowledged that Plaintiff was moderately limited in her ability to "maintain attention and concentration for extended periods," "work in coordination with or in proximity to others without being distracted by them," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 89.) He further explained that Plaintiff had "moderate difficulty sustaining concentration and maintaining pace caused by severe depressive [symptoms] and some

[1] Because Plaintiff limits her challenges to the mental RFC, the Court will consider only the medical opinions addressing her mental impairments.

paranoia/negative thinking consistent with her conditions but should be able to sustain at least simple and some complex tasks in low contact settings." (*Id.*) He noted that Plaintiff was moderately limited in her ability to "interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors," and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (*Id.*) He also explained that Plaintiff had "moderate difficulty regulating emotions and interacting with others caused by severe depressive [symptoms] and some paranoia/negative thinking consistent with her conditions appears to be capable of brief, superficial interactions in order to meet work-related needs and would benefit in low contact settings." (*Id.*) Although finding Plaintiff to be mildly limited in the remaining two categories, Dr. Dekoen did conclude that Plaintiff was moderately limited in her ability to "respond appropriately to changes in the work setting." (*Id.*)

Consultative examiner Dr. Fabiano also provided an opinion. (Tr. 471-75.) During his examination, he noted that Plaintiff's attention and concentration were "grossly intact." (Tr. 473.) He recognized that "[s]he could complete counting tasks, simple calculations, and a serial 3s task counting down from 20." (*See id.*) He also acknowledged that "[s]he was unable to complete a serial 7s task counting down from 100." (*See id.*) As to recent and memory skills, he noted that she was "[m]ildly impaired due to distractibility." (*See id.*) Dr. Fabiano noted that Plaintiff's performance on the mental status examination was "inconsistent" with her twenty-two years of employment: "[o]n the mental status exam she could not recall 3 of 3 objects after a delay which is inconsistent with [her] employment history. There have been no reported neurocognitive events to cause the sort of difficulties which would account for the inconsistency. Inconsistency appears related to

distractibility." (Tr. 473.) He acknowledged that Plaintiff could "dress, bathe, and groom herself, cook, and prepare food, do cleaning, do laundry, shop, manage money, and drive." (Tr. 473-74.) Plaintiff also reported she had friends. (Tr. 474.) Dr. Fabiano concluded:

> The claimant appears to have mild limitations in the ability to understand, remember, or apply simple and complex directions and instructions. She appears to have mild to moderate limitations in the ability to interact adequately with supervisors, co-workers, and the public, sustain concentration and perform a task at a consistent pace, and regulate emotions, control behavior, and maintain well-being. She does not appear to have evidence of limitation in ability to use reason and judgment to make work-related decisions, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, or have any awareness of normal hazards to take appropriate precautions.
>
> The results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

(*Id.*)

Licensed Clinical Social Worker (LCSW) Bethany Burke, Plaintiff's treating mental health provider, also submitted a statement regarding Plaintiff's mental conditions. (Tr. 1063-66.) She acknowledged that Plaintiff was diagnosed with "[m]ajor depressive disorder, recurrent, severe with psychotic symptoms." (Tr. 1063.) She noted that Plaintiff "presented with intense mood dysregulation, incapacitating depressive symptoms, paranoia, illogical thoughts, anxious distress, cognitive distortions and at times suicidal thinking." (*Id.*) Counselor Burke noted that Plaintiff's symptoms "persist as clinically significant" but recognized they were more controlled with medication. (*See id.*) She indicated Plaintiff would be limited in her ability to "function causing illogical fears, poor motivation, social isolation, poor sleep and eating, irritability, excessive tearfulness and feeling frozen and inability to accomplish basic life tasks." (*See id.*) She further opined

that "stressful situations often result in increased autonomic responses which can increase the likelihood of symptom occurrences." (*See id.*) Counselor Burke concluded that Plaintiff had "no useful ability to function" in four categories, including "work[ing] in coordination with or proximity to others without being unduly distracted, complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms, perform[ing] at a consistent pace without an unreasonable number and length of rest periods, and deal[ing] with normal work stress." (Tr. 1065.) She further found that Plaintiff was "unable to meet competitive standards" in four other categories, including "maintain[ing] attention for two[-]hour segment[s], maintain[ing] regular attendance and be[ing] punctual within customary, usually strict tolerances, accept[ing] instructions and respond[ing] appropriately to criticism from supervisors, and get[ting] along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes." (*Id.*) Finally, she opined that Plaintiff would miss, on average, more than four days each month. (Tr. 1066.)

### 3. Vocational Expert Testimony

During the hearing, the ALJ questioned a vocational expert (VE). In response to the ALJ's hypothetical, the VE offered the document preparer job and the ticket counter job, identifying 15,670 and 6,396 jobs respectively. (Tr. 63.) When asked by the ALJ if she had ever seen those jobs performed, she indicated she had and confirmed that her observations were consistent with the provided hypothetical. (*Id.*) Plaintiff's counsel did not question the VE about the document preparer job or the basis for the number of jobs she identified. (Tr. 64.)

In March 2024, the ALJ submitted interrogatories to the VE, focused on the document preparer job. (*See* Tr. 277-78.) In response to a question regarding whether the position is now being performed in a more modern way, the VE explained:

> Yes. Technology has changed significantly since the DOT was last updated. Although the technology of the position of Document Preparer has changed the essential functions remain the same. Based on my experience, the SVP remains a level two and the strength remains at sedentary. The numbers I gave in my testimony reflect the numbers of positions as the job is performed in present time. At this time, the job typically involves scanning of documents into a computer.

(Tr. 278.)

The VE confirmed she had last observed the document preparer position "five years ago" and that she became familiar with how the document preparer position was performed in modern times "[b]ased on [her] observation of the position." (*Id.*) She further explained that she had "also completed ongoing vocational research and [had] placed an individual in this position in the past." (*See id.*) The VE's responses to the interrogatories were proffered to Plaintiff's counsel who responded that he had no objection to this evidence. (*See* Tr. 285.)

**C. ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026. (Tr. 19.)

2. The claimant has not engaged in substantial gainful activity since September 10, 2021, the alleged onset date (20 CFR 404.1571 *et seq*.). (Tr. 19.)

3. The claimant has coronary artery disease status-post stent placement in 2016 and heart attack with stent placement in July 2021; and major depressive disorder, each of which constitutes a severe impairment (20 CFR 404.1520(c)). (Tr. 20.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 20.)

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can have no more than occasional contact with supervisors, coworkers and the public; can perform no more than simple, repetitive one-and-two-step tasks; should not perform complex work defined as work involving multiple, simultaneous goals or objectives or the need to independently set quality, quantity, or method standards; should avoid extremes of heat and humidity; could not perform tandem work; and her work needs to be evaluated on a half day or daily basis rather than minute-to-minute as in production work. (Tr. 23.)

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565). (Tr. 31.)

7. The claimant was born on August 15, 1978 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563). (Tr. 31.)

8. The claimant has at least a high school education (20 CFR 404.1564). (Tr. 31.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 31.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). (Tr. 31.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and

were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B. Standard to Determine Disability**

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability

to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff asserts two arguments in support of remand. First, she argues that the ALJ erred in his evaluation of the medical opinions, causing his mental RFC to be unsupported by substantial evidence. (*See* Doc. 9-1 at 10.) Second, she contends that the ALJ erred by relying on an obsolete occupation in his step five analysis, failing to carry the burden of proving there are significant jobs in the national economy that Plaintiff can perform. (*See id.*)

### A. The ALJ's Evaluation of the Opinion Evidence and Resulting RFC is Supported by Substantial Evidence.

Plaintiff challenges the legal soundness of the mental limitations in the RFC. She argues that the ALJ improperly evaluated the opinion evidence of agency reviewer Dr. Dekeon, consultative examiner Dr. Fabiano, and treating provider LCSW Burke. As such,

she contends that the RFC is not supported by substantial evidence and must be reversed.

As a preliminary matter, the regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding. 20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021). As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

However, "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source") (citations omitted). "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022). However, "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more

neutrally as weighing the evidence." *Regina M. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06629 EAW, 2025 WL 899008, at *3 (W.D.N.Y. Mar. 25, 2025) (*quoting Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022)) (quotations and citations omitted).

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a

medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

**1. The ALJ Properly Evaluated Dr. Dekeon's Opinion.**

Plaintiff argues the ALJ improperly evaluated Dr. Dekeon's opinion such that it ultimately does not support the RFC. She focuses her challenges on the ALJ's treatment of Dr. Dekeon's social limitations, as well as the ALJ's consistency analysis. (*See* Doc. 9-1 at 20-22.)

**a. Social contact limitations are supported by substantial evidence.**

Plaintiff contends that, despite finding Dr. Dekeon's opinion persuasive, the ALJ ultimately did not incorporate his more restrictive social limitations limiting Plaintiff to "brief, superficial interactions," because the ALJ only limited Plaintiff to "occasional contact with supervisors, coworkers and the public." (*See id.* at 13.) Plaintiff maintains that this limitation does not account for the length and quality of the interaction, thereby rendering the RFC unsupported by substantial evidence. (*See id.* at 15.)

As an initial matter, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quotation and citation omitted). *See also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (recognizing that an ALJ is not required to discuss every piece of evidence within an administrative record). And an ALJ is permitted to accept only portions of a medical opinion. *See April W. v. Comm'r of Soc. Sec.,* No. 1:24-cv-00044-MAV, 2024 WL 4804778, at *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence") (quoting *Demeca P. v. Comm'r of Soc. Sec.,* No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)). Nevertheless, if an ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *See Jammy N. v. Comm'r of Soc. Sec.*, No. 24-CV-99-FPG, 2025 WL 786386, at *3 (W.D.N.Y. Mar. 12, 2025) (internal quotation marks and citations omitted).

Plaintiff relies on several out-of-district cases in support of the argument that a limitation to "occasional" contact does not satisfactorily address an opined limitation to "brief, superficial interactions." However, several cases from the Western District of New York have expressly rejected this argument. *See Jammy N.*, 2025 WL 786386, at *3 ("Many courts have found that where, as here, an ALJ properly gave considerable weight to a medical opinion stating a Plaintiff's ability to handle brief and superficial contact, an RFC containing a limitation to 'occasional interaction' is supported by substantial evidence."); *Amos v. Comm'r of Soc. Sec.*, No. 18-CV-1367 (WBC), 2020 WL 1493888, at *5-6 (W.D.N.Y. Mar. 27, 2020) (finding that the RFC providing for occasional interaction

with the public and coworkers was supported by substantial evidence where the ALJ gave significant weight to a medical opinion that plaintiff could handle brief and superficial contact); *Ward v. Comm'r of Soc. Sec.*, No. 18-CV-1317-FPG, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020) (finding that the RFC's limitation to "occasional interaction" accounted for a medical opinion limiting plaintiff to brief and superficial contact).

While the Court acknowledges that some courts within this district have found the terms not to be functional equivalents, *see Maria M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00962-TPK, 2024 WL 33210, at *3 (W.D.N.Y. Jan. 3, 2024), it is elementary that this Court cannot review the evidence *de novo* or ascertain the best interpretation of the evidence. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (recognizing that "[i]f [the] evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld").

Thus, in light of the status of the law, "[a]n ALJ in a particular case may rationally conclude that 'brief and superficial' contact and 'occasional' contact are functionally equivalent." *Alexa A. v. Comm'r of Soc. Sec.*, No. 1:24-CV-01235-CJS, 2026 WL 668274, at *10 (W.D.N.Y. Mar. 10, 2026) (quoting *Michael G. v. Comm'r of Soc. Sec.*, No. 1:23-cv-00767-EAW, 2024 WL 3616282, at *5 (W.D.N.Y. July 31, 2024)) (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) (finding "no obvious inconsistency" between an opinion that the plaintiff was moderately limited in his interactions with coworkers and could "relate to others on a superficial work basis" and the ALJ's RFC finding that the plaintiff was capable of occasional interaction with coworkers); *Schmidt v. Kijakazi*, No. 21-CV-0319-BHL, 2022 WL 17584173, at *3 (E.D. Wis. Dec. 12, 2022) ("In most circumstances, a reasonable person could safely assume that the superficiality of

contacts has some reasonable correlation with their frequency, especially in the workplace.”)).

As another court in this district recognized, “[a] *per se* rule requiring reversal and remand whenever an ALJ conflates ‘occasional’ and ‘superficial’ is, therefore, at odds with the highly deferential substantial evidence standard, which itself demands nothing more than ‘such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’” *Michael G.*, 2024 WL 3616282, at *5 (quoting *Schmidt*, 2022 WL 17584173, at *3 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019))).

Here, Dr. Dekeon ultimately assigned a moderate limitation in Plaintiff’s ability to interact with others, noting she “appears to be capable of brief, superficial interactions in order to meet work-related needs and would benefit in low contact settings.” (Tr. 89.) This is consistent with a limitation to occasional contact. *See Cynthia A. E. v. Comm'r of Soc. Sec.*, No. 5:22-CV-0974 MAD DEP, 2023 WL 9116628, at *8 (N.D.N.Y. Oct. 17, 2023), *adopted*, 2023 WL 8432332 (N.D.N.Y. Dec. 5, 2023) (“[W]hile the state agency sources did opine a limitation to brief and superficial contact, their opinion was not the only opinion on which the ALJ relied. Rather, he found that Dr. Valencia-Payne's opinion was also persuasive to the extent it opined a moderate limitation in, as relevant here, plaintiff's ability to interact with others.”).

Accordingly, the Court finds no basis to disturb the ALJ’s RFC.

**b. The ALJ’s consistency analysis was adequate.**

Plaintiff next argues, in essence, that the ALJ erred by accepting Dr. Dekeon’s interpretation of Counselor Burke’s treatment notes, rather than Counselor Burke’s more stringent interpretation of Plaintiff’s abilities, and in concluding that those notes supported

Dr. Dekeon's assigned moderate limitations. Plaintiff also contends that the ALJ failed to explain how abnormal findings are consistent with Dr. Dekeon's moderate limitations.

The ALJ recognized that Dr. Dekeon assigned "'moderate' limitations in interacting with others and in concentrating, persisting, or maintaining pace and 'mild' limitations in understanding, remembering, or applying information and adapting or managing oneself, and her depression is a severe impairment." (Tr. 29.) He found this opinion persuasive, noting that it was "supported by the updated counseling records Dr. Dekeon cited from 2023 showing that claimant appeared more depressed, was struggling with negative thinking patterns, and was visibly tearful and upset" and "consistent with the claimant's reports of concentration difficulties and trouble being in social situations." (*Id.*) The ALJ further noted the opinion "for mild limitations [was] also consistent with the examinations showing she was alert and fully oriented and [was] able to do household chores, albeit with some limitations." (Tr. 30.) Additionally, in his evaluation of Dr. May's opinion, he noted that Dr. Dekeon had the benefit of reviewing additional records and found that Dr. Dekeon's opinion was "consistent with the claimant's treatment record." (Tr. 29.)

Having reviewed the record, the Court finds no error in the ALJ's consistency analysis. First, the Court agrees that moderate limitations are consistent with Plaintiff's treatment record. While there were instances of abnormal findings, there were similarly instances of normal observations, including good attention span, judgment, and improving insight, as well as reported improvement during her treatment with Counselor Burke. (*See* Tr. 26-28); (*see also, e.g.*, Tr. 480, 482, 490, 492, 494, 499, 502, 504, 665-67, 951.)

Further, as discussed above, Dr. Dekeon's moderate restrictions are consistent with Plaintiff's complaints related to difficulty with social situations, as well as her concentration limitations. Plaintiff's mental examinations often reflected a good attention span, and Dr. Fabiano had concluded that Plaintiff was mildly to moderately limited in sustained concentration. (*See* Tr. 474.)

Finally, these limitations are consistent with Plaintiff's ability to perform household chores. (Tr. 29-30.) It is well-settled that an ALJ is permitted to consider activities of daily living. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (recognizing that "[t]he ALJ also relied on Cichocki's Daily Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work."). And Plaintiff reported being able to dress, bathe, and groom herself, as well as cook, clean, do laundry, shop, manage money, and drive. (Tr. 473-74.)

Plaintiff contends that the ALJ failed to explain how the latest treatment notes he referenced in his decision, which reflected Plaintiff's difficulties, supported Dr. Dekeon's moderate limitations and, ultimately, the ALJ's RFC. The Court, however, reads the ALJ's citation to these notes simply to reflect Dr. Dekeon's review of these additional notes, which were not before Dr. May, demonstrating a more complete file review.[2]

Again, an ALJ is not required to discuss every piece of evidence within an administrative record. *See Brault*, 683 F.3d at 448. Nor is an ALJ required to accept a provider's interpretation of her own treatment notes—this rightfully falls within the ALJ's formulation of an RFC when considering the whole of the record. *See Matta*, 508 F. App'x

[2] The Court notes that Dr. May found Plaintiff's psychiatric impairments to be non-severe, an opinion that the ALJ found to be not persuasive. (Tr. 29.)

at 56 (recognizing that an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole"). This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino*, 312 F.3d at 588. The Court finds no error in evaluating the consistency of Dr. Dekeon's opinion with the record.

**2. The ALJ Properly Evaluated Dr. Fabiano's Opinion.**

Plaintiff also challenges the ALJ's evaluation of Dr. Fabiano's opinion, arguing that the ALJ failed to include certain of Dr. Fabiano's limitations in the RFC, or alternatively explain why the ALJ rejected them.

**a. The ALJ's RFC adequately encompassed Dr. Fabiano's limitations as to regulating emotions, controlling behavior, and maintaining well-being.**

Plaintiff contends that the ALJ erred by not including limitations found in Dr. Fabiano's opinion, specifically that she had "mild to moderate limitations in the ability to . . . regulate emotions, control behavior, and maintain well-being." (Doc. 9-1 at 12) (quoting Tr. 474.) Plaintiff argues that the ALJ's limitation to simple, unskilled work was inadequate to address this portion of Dr. Fabiano's opinion. (*See id.*)

The Court disagrees. Here, the ALJ applied several mental limitations, including "no more than occasional contact with supervisors, coworkers and the public;" "perform[ing] no more than simple, repetitive one-and-two-step tasks;" "not perform[ing] complex work defined as work involving multiple, simultaneous goals or objectives or the need to independently set quality, quantity, or method standards;" "not perform[ing] tandem work;" and limiting the evaluation of her work to "a half day or daily basis rather than minute-to-minute as in production work." (*See* Tr. 23.)

Courts have found such limitations to sufficiently address limitations regarding regulating emotions, controlling behavior, and maintaining well-being. *See Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0380 (JJM), 2024 WL 4131237, at *7 (W.D.N.Y. Sept. 10, 2024) ("Up to moderate limitations in the functional area of regulating emotion, controlling behavior, and maintaining well-being may be accounted for in an RFC by limiting a plaintiff to simple, routine work with limited interactions with others.") (citations omitted); *David B. v. Comm'r of Soc. Sec.*, No. 1:20-cv-01248-TPK, 2021 WL 6133282, *2-3 (W.D.N.Y. Dec. 28, 2021) (affirming ALJ's determination limiting plaintiff to "simple, routine, repetitive work which did not require more than occasional contact with others" where the consultative examiner and state agency reviewer found plaintiff had, *inter alia*, mild-to-moderate limitations in regulating emotions, controlling behavior, and maintaining well-being); *Michelle K. v. Comm'r of Social Security*, 527 F. Supp. 3d 476, 483 (W.D.N.Y. 2021) (RFC limiting plaintiff to "simple, routine, and repetitive tasks, making simple work-related decisions, and occasionally interacting with supervisors, coworkers, and the public" was consistent with limitations in doctor's opinion that included moderate limitations in the ability to "regulate emotions, control behavior, and maintain well-being").

Finally, Plaintiff's reliance on *Jimmie E. v. Comm'r of Soc. Sec.*, 20-CV-0406, 2021 WL 2493337, at *1 (W.D.N.Y. June 18, 2021), is unavailing. In that case, the plaintiff not only had moderate limitations in regulating emotions and controlling behavior, but he also had a history of physical altercations with others. *Id.* at *4. Plaintiff in this case has no such history.

The Court notes that it remains Plaintiff's burden to show the necessity of a more limiting RFC. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (recognizing

that the plaintiff has the burden to prove a more restrictive RFC). Plaintiff has not carried that burden here. Therefore, the Court finds no error in the ALJ's RFC.

**b. The ALJ's consistency analysis was adequate.**

Plaintiff also asserts that the ALJ failed to properly analyze the consistency factor as it pertained to Dr. Fabiano's opinion. (*See* Doc. 9-1 at 15-19.) Specifically, she argues that the ALJ's citation to 397 pages of the record without further explanation is insufficient. (*See id.* at 16.) Plaintiff maintains that the ALJ's reliance on Plaintiff's ability to be cooperative, pleasant, and have a normal attention span during examinations was misplaced and inconsistent with Dr. Fabiano's opinion. (*See id.*)

The ALJ evaluated consultative examiner Dr. Fabiano's opinion, finding it to be persuasive. (*See* Tr. 29.) He noted:

> Dr. Fabiano's opinion is supported by his examination of the claimant showing her attention and concentration were grossly intact, although she was unable to complete a serial 7s tasks counting down from 100, and her recent and remote memory were mildly impaired due to distractibility but was otherwise normal (Ex. 6F). Dr. Fabiano's opinion is consistent with the record showing that the claimant reported trouble in social situations but was noted to be cooperative and pleasant during examinations, and she reported she had some trouble with concentration but generally had a normal attention span during examinations (Exs. 7F, 10F, 13F).

(Tr. 29.)

The Court finds no error with the ALJ's consistency analysis. First, the Court agrees that the overall record is consistent with Dr. Fabiano's conclusions. The exhibits cited by the ALJ contain numerous references to instances where Plaintiff was noted to be cooperative, (*see, e.g.,* Tr. 567, 622, 683), cooperative and pleasant, (*see, e.g.,* Tr. 576, 593, 599, 606, 615), and having a normal attention span, (*see, e.g.,* Tr. 482, 483, 485, 487, 488, 490, 492, 494, 500, 502, 504, 509, 511). Contrary to Plaintiff's argument,

many examinations were done in person, rather than via telemedicine. (*See, e.g.,* Tr. 576, 593, 599, 606, 615, 622, 683.) While citations to specific pages may have aided in the Court's review of the ALJ's analysis, the lack thereof did not prevent the Court from reviewing the ALJ's reasoning. And Dr. Fabiano similarly reported unremarkable findings in his examination, although Plaintiff was unable to complete a "serial 7s task counting down from 100" and her memory skills were "mildly impaired due to distractibility."[3] (Tr. 472-73.) The ALJ's conclusions are further supported by Dr. Fabiano's finding that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (Tr. 474.)

Next, the Court rejects any claim that the ALJ cherry-picked the record. To the contrary, the Court notes ALJ Weir carefully detailed the evidence set forth in the record, including facts that may be viewed as supporting Plaintiff's claim for disability. (*See* Tr. 23-30.) The ALJ ultimately resolved this conflicting evidence, finding Plaintiff not disabled. It is well settled that conflicts within the evidence are to be resolved by the ALJ, *see Veino*, 312 F.3d at 588, and once resolved by the ALJ, they cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original) (citation omitted). Thus, the Court is plainly prohibited from re-weighing the evidence as Plaintiff requests. *See also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Simply put,

---

[3] However, Dr. Fabiano did note that her "results of the mental status exam are inconsistent with the claimant's vocational history. The claimant was gainfully employed for 22 years. On the mental status exam she could not recall 3 or 3 objects after a delay which is inconsistent with this employment history. . . . Inconsistency appears related to distractibility." (Tr. 473.)

Plaintiff's disagreement with the ALJ's resolution of conflicting evidence is not grounds for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination."). The Court finds no error in the ALJ's consistency analysis.

**3. The ALJ Properly Evaluated Counselor Burke's Opinion.**

Plaintiff further contends that the ALJ erred by failing to give Counselor Burke's opinion due consideration given the nature and length of her position as Plaintiff's treating mental health provider. (Doc. 9-1 at 22.) She also argues that the ALJ failed to explain how Counselor Burke's opinion was inconsistent with the record. (*See id.* at 23.)

The ALJ, after detailing Plaintiff's pertinent treatment history and notes, evaluated Counselor Burke's opinion:

> I have considered the December 20, 2023 medical source statement of Bethany Burke, LCSW, the claimant's mental health counselor, that the claimant is "limited," "seriously limited," and "unable to meet competitive standards" in multiple of the mental abilities and aptitudes needed to do unskilled work and would be absent from work more than four days per month due to her impairments and treatment (Ex. 16F, pp. 2-5). As a licensed clinical social worker, Ms. Burke is not an "acceptable medical source" under the Regulations (20 CFR 404.1502). Although Ms. Burke's medical source statement is generally supported by the letters that she provided describing the claimant's condition (Ex. 8F; Ex. 16F, p. 1), it is not consistent with the remainder of the medical record and it is an overstatement of the claimant's mental limitations. As described above, the claimant's examinations consistently showed her to be pleasant, cooperative, alert, and oriented with a normal attention span (Exs. 7F, 13F, 15F).

(Tr. 30.)

The Court finds no error in the ALJ's analysis. First, it is well-settled that the ALJ cannot defer to any opinion, including one from a treating source. *See* 20 C.F.R. § 404.1520c(a). While length of any treating relationship is a factor to be considered, an ALJ is not required to explain the extent to which this factor is considered in the evaluation of an opinion. *See* 20 C.F.R. § 404.1520c(b)(2). Second, other courts have affirmed the reasoning of an ALJ who discounted medical opinions assigning significant limitations in pace and social aspects when a plaintiff's objective medical examinations reflected cooperative and pleasant behavior, as well as normal attention and fair insight and judgment. *See Erica P. v. Comm'r of Soc. Sec.*, No. 23-cv-00169-EAW, 2025 WL 2693455, at *5 (W.D.N.Y. Sept. 22, 2025); *Jeffrey R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00709-EAW, 2023 WL 2581539, at * 4-5 (W.D.N.Y. Mar. 21, 2023).

The Court acknowledges that Plaintiff identifies certain evidence to support her position that her impairments are disabling. However, there is also evidence, as cited by the ALJ, that Plaintiff could function despite her mental conditions.[4] The question to this Court is not whether there is some evidence to support Plaintiff's position. Rather, it is whether there is substantial evidence that supports the ALJ's position. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448. It means that, "once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (emphasis in original) (internal quotations and citations omitted). Given the deference

[4] The Court also notes that two of Plaintiff's treating providers, Dr. Wormer and Counselor Burke, both recognized that Plaintiff did not comply with treatment recommendations, and that these refusals likely impacted how she felt, including her fatigue and mood. (*See* Tr. 524,607, 616.)

the Court is required to afford under the substantial evidence standard, the Court finds there is sufficient evidence to affirm the ALJ's conclusion. *See Livia R. v. Comm'r of Soc. Sec.*, No. 23-CV-1319S, 2025 WL 922642, at *2 (W.D.N.Y. Mar. 27, 2025) (citing *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (noting that, when supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].).

Accordingly, the Court finds no error in the ALJ's evaluation of the medical opinion evidence and concludes that the mental RFC is supported by substantial evidence.

**B. The ALJ's Step Five Analysis Is Supported By Substantial Evidence.**

Plaintiff argues that the position of document preparer is obsolete, and so the ALJ's reliance on the VE's testimony to carry his burden of proof at Step Five of the sequential analysis was error. (Doc. 9-1 at 27.) Plaintiff further maintains that any attempt by the ALJ to clarify the testimony was unsuccessful because there was no testimony regarding how the VE found the same numbers applied to the modernized position. (*See id.* at 28.)

In his decision, the ALJ addressed the VE's testimony regarding the document preparer position:

> In post-hearing vocational interrogatories dated March 19, 2024, the vocational expert said that the occupation of Document Preparer is performed in a more modern way than it is described in the Dictionary of Occupational Titles. She explained that technology has changed significantly since the Dictionary of Occupational Titles was last updated but although the technology of the position of Document Preparer has changed, the essential functions of the job remain the same. She said that based on her experience, the SVP level remains at level two and the strength remains at sedentary. She said the numbers she gave in her testimony reflect the numbers of positions as the job is performed in present time. She also said at this time, the job typically involves scanning of documents into a computer. The vocational expert said she has observed the Document

> Preparer position and she last observed the position an estimated five years ago. She became familiar with how the Document Preparer occupation is performed in modern times based on her observation of the position. She also completed ongoing vocational research and has placed individuals in this position in the past (Ex. 15E).

(Tr. 32.)

At step five, the Commissioner has the burden to demonstrate that a claimant can perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. *See* 20 C.F.R. § 416.920(g). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [Plaintiff is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b).

Courts within this district recognize that, while "there is no bright line test to be applied here[,] . . . numbers between 9,000 and 10,000 have generally been considered to be sufficient to satisfy the Commissioner's step five burden." *Rae L. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00921-TPK, 2025 WL 2611384, at *7 (W.D.N.Y. Sept. 10, 2025) (citing *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018); *Pichardo v. Comm'r of Soc. Sec.*, 714 F. Supp. 3d 183, 195 (E.D.N.Y. 2024) (identifying 13,400 jobs as satisfying the significant number requirement); *George v. Saul,* No. 3:19-cv-01456, 2020 WL 6054654, at *5 (D. Conn. Oct. 14, 2020) (10,500 jobs); *Holly W. v. Comm'r of Soc. Sec.*, No. 22-cv-512S, 2023 WL 4445586, at *4 (W.D.N.Y. July 11, 2023) (11,800 jobs); *Sarah Ann Z. v. Comm'r of Soc. Sec.*, No. 1:19-cv-01110(JJM), 2021 WL 1206516, at *8 (W.D.N.Y. Mar. 31, 2021) (9,840 jobs)).

The Court recognizes that multiple courts within the Second Circuit have characterized the job of document preparer as obsolete.[5] *See Julia K. v. Comm'r of Soc. Sec.*, No. 23-cv-193(JLS), 2024 WL 3760344, at *3 (W.D.N.Y. Aug. 9, 2024) (recognizing that "[s]everal courts have recently determined that the job of 'document preparer' has been rendered obsolete by computers"); *James B. v. Comm'r of Soc. Sec.*, No. 23-cv-873-FPG, 2024 WL 4471080, at *2 (W.D.N.Y. Oct. 11, 2024) (recognizing that the jobs of addresser and document preparer are manifestly obsolete"); *Melanie V. v. Comm'r of Soc. Sec.*, 23-cv-973S, 2024 WL 3337924, at *5 (W.D.N.Y. July 9, 2024); *Pamela H. v. Kijakazi*, No. 5:20-cv-00304 (NAM), 2021 WL 4307457, at *6 (N.D.N.Y. Sept. 22, 2021) (recognizing that technology rendered the document preparer and addresser positions obsolete).

It also acknowledges that the SSA has imposed additional inquiry and evidentiary burdens surrounding certain jobs, including the document preparer job. Specifically, in June of 2024, an Emergency Message was issued, notifying adjudicators they "may not cite any of the DOT occupations …to support a framework 'not disabled' determination or decision without additional evidence from a [Vocational Expert] supporting the adjudicator's conclusion that, as the occupation is currently performed that it exists in the national economy in significant numbers." *Melanie V.*, 2024 WL 3337924, at *5 (quoting

---

[5] The Court further notes that there is authority counseling against a court engaging in an obsolescence analysis during review of an ALJ's decision. *See Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("We decline Bavaro's invitation to take judicial notice of the decline of the photofinishing industry and deem the position infeasible for her. A vocational expert testified to the existence of such jobs at the national and regional level. The ALJ was entitled to credit that testimony . . . and we will not disturb that finding based on Bavaro's conclusory proclamations to the contrary."); *see also Angi W. v. Comm'r of Soc. Sec.*, No. 21 CV 0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22, 2023) ("[T]he Court would be loath to conduct its own analysis of job types and job availability and second guess the vocational expert's conclusions."). However, in light of the below discussion, the Court need not decide whether the document preparer job is, in fact, obsolete.

Soc. Sec. Admin., EM-24027 (June 22, 2024), https://secure.ssa.gov/apps10/references.nsf/links/06212024022159PM)) (alterations in original). This Emergency Message was revised in early 2025 to require a "heightened evidentiary and articulation requirement" regarding certain DOT occupations, including the document preparer job. *See Justina O. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00610 EAW, 2026 WL 111301, at *4 (W.D.N.Y. Jan. 15, 2026). The revised Emergency Message requires VE testimony demonstrating support for the conclusion that, as the occupation is currently performed: "[i]ts requirements are consistent with the individual's RFC, and it exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." Soc. Sec. Admin, EM-24027 REV (Jan. 6, 2025), https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM. Further required is that "[t]he determination or decision must include or summarize the . . . VE's evidence that supports such a conclusion." *Id.* Thus, the Emergency Messages thus required the ALJ to explore with a VE whether: (1) as the occupation is currently performed, "[i]ts requirements are consistent with the individual's RFC," and (2) that the occupation "exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." *See id.*; *see also Laura W. v. Comm'r of Soc. Sec.*, No. 25-cv-50432, 2026 WL 2474803, at *3 (N.D. Ill. Aug. 24, 2026)

However, neither of these Emergency Messages had been issued when the ALJ conducted the hearing, which occurred in January 2, 2024, or issued his decision in this case, which was dated April 9, 2024. And, notably, Plaintiff's counsel never raised any challenge to the VE's identification of the document preparer job or her testimony surrounding the job despite two opportunities to do so. Nevertheless, the Court finds that

the ALJ complied with the heightened evidentiary and articulation requirements imposed by the SSA and further concludes that the ALJ's Step Five analysis is supported by substantial evidence.

To begin, the VE testimony satisfies the first requirement because it demonstrated that, as the occupation is currently performed, "[i]ts requirements are consistent with the individual's RFC." *See* EM-24027 REV. Specifically, the VE described in her responses to the post-hearing interrogatories that the occupation now "typically involves scanning of documents into a computer." (Tr. 278.) The VE also explained that the "essential functions remain the same" and expressly noted that "[b]ased on [her] experience, the SVP remains a level two and the strength remains at sedentary." (*See id.*) The VE confirmed she became familiar with how the document preparer position was performed in modern times "[b]ased on [her] observation of the position." (Tr. 278.) These responses satisfy the first requirement. *See Tarik F. v. Comm'r of Soc. Sec.*, No. 24 Civ. 10032 (SLC), 2026 WL 381201, at *10 (S.D.N.Y. Feb. 11, 2026) (finding that the VE's confirmation that the position was not obsolete and that he had considered the changes in technology in opining on the number of positions satisfied the requirements of the Emergency Message); *Oswaldo N. v. Comm'r of Soc. Sec.*, No. 1:24cv07970-GRJ, 2025 WL 2062702, at *9 (S.D.N.Y. July 23, 2025) (concluding that the VE's testimony that, even though the position used technology, it would still be performed at the sedentary unskilled level satisfied the new requirements under the Emergency Messages); *see also Laura W.,* 2026 WL 2474803, at *3 (finding that the heightened standard set forth in the Emergency Messages were met when the VE testified that, even in the modernized way the job was performed, the occupation remained sedentary and unskilled and that the

numbers identified took into account how the job was presently performed); *McGuinty v. Bisignano*, No. 1:25-cv-1965, 2026 WL 1413553, at *8 (M.D. Penn. May 20, 2026) (same).

Next, the VE's testimony demonstrated that the occupation "exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." *See* EM-24027 REV. During the hearing, the VE testified to 15,670 available jobs as a document preparer. (Tr. 63.) In her responses to the interrogatories, she confirmed "[t]he numbers [she] gave in [her] testimony reflect the numbers of positions as the job is performed in present time." (Tr. 278.) The VE explained she had observed the position, had "also completed ongoing vocational research[,] and [had] placed an individual in this position in the past." (*See id.*) These responses satisfy the second requirement.[6] *See Tarik F.*, 2026 WL 381201, at *10; *Oswaldo N.*, 2025 WL 2062702, at *9; *see also Laura W.*, 2026 WL 2474803, at *3; *McGuinty*, 2026 WL 1413553, at *8.

Furthermore, the ALJ incorporated his analysis and conclusions into the decision, thereby satisfying his heightened burden of articulation. *See* EM-24027 REV.

Accordingly, Plaintiff's challenge to the ALJ's Step Five analysis is unavailing.

---

[6] Plaintiff relies on *Julia K. v. Comm'r of Soc. Sec.*, No. 23-cv-193(JLS), 2024 WL 3760344, at *4 (W.D.N.Y. Aug. 9. 2024) in support of her argument that the VE testimony did not satisfy the second requirement. (*See* Doc. 9-1 at 30.) The Court finds this case distinguishable. In *Julia K.*, the court found that, while the VE testified to the modernization of the position, that court "has no way to determine whether the number of digital scanner jobs equates to those of a document preparer under [the DOT]." *Julia K.*, 2024 WL 3760344, at *4. But here, the VE expressly testified that the numbers to which she testified were as the position was performed. (*See* Tr. 278.) While Plaintiff seems to argue some additional evidence is required, the Court finds the VE testimony is sufficient. *See Biestek*, 587 U.S. at 105 (recognizing that a VE's "testimony may count as substantial evidence even when unaccompanied by supporting data").

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 9) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: September 10, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge